Page 1

1            IN THE UNITED STATES DISTRICT COURT

2                FOR THE DISTRICT OF KANSAS

3                 AT KANSAS CITY, KANSAS

4

5    MAELLA BLALOCK,    )

6    Plaintiff,         )

7    vs                 ) Case No. 21-CV-02552

8    SRKBS HOTEL, LLC,  )

9    Defendant.         )

10   _____)

11                  DEPOSITION OF

12                BRIAN A. MALCOLM

13

14                August 14, 2023

15                  2:18 p.m.

16

17

18                  Taken at:

19      Wichita Police Department - City Hall

20         455 North Main - 13th Floor

21            Wichita, Kansas 67202

22

23

24

     Job No. CS6045267

25   Kathy R. Bonfiglio, CSR-KS, CSR-MO, RPR

**EXHBIT 9**

Page 2

```
1   APPEARANCES:
2       On behalf of the Plaintiff:
3       Mr. Jeffrey A. Wilson
4       DeVaughn James Injury Lawyers
5       3241 North Toben
6       Wichita, Kansas 67226
7       (316)977-9999
8       Fax: (316)425-0414
9       jwilson@devaughnjames.com
10
11      On behalf of the Defendant:
12      Ms. Kerry B. Banahan Dagestad
13      Evans & Dixon, LLC
14      211 North Broadway, Suite 2500
15      St. Louis, Missouri 63102
16      (314)552-4023
17      Fax: (314)884-4423
18      kbanahan@evans-dixon.com
19
20      On behalf of the City of Wichita, Kansas
21      Mr. Erik S. Houghton
22      Deputy City Attorney
23      Department of Law
24      455 North Main, 13th Floor
25      Wichita, Kansas 67202
```

Page 3

```
1       (316)268-4681
2       Fax: (316)268-4335
3       ehoughton@wichita.gov.
```

Page 4

```
1                 TRANSCRIPT INDEX
2   APPEARANCES...................................  2
3   INDEX OF EXHIBITS............................   4
4
5   EXAMINATION OF BRIAN A. MALCOLM:
6   BY MS. BANAHAN...............................   6
7   BY MR. WILSON................................  29
...
18  REPORTER'S CERTIFICATE......................  34
19
20  EXHIBIT CUSTODY
21  EXHIBITS RETAINED BY COURT REPORTER
```

Page 5

```
1              INDEX OF EXHIBITS
2   NUMBER       DESCRIPTION           MARKED
3   Defendant C   Supplemental Information
4        Report re: Case 20C037022....  10
```

1        BRIAN A. MALCOLM,
2  having been first duly sworn on his oath to testify
3  the truth, the whole truth, and nothing but the
4  truth, testifies:
5            DIRECT EXAMINATION
6  BY MS. BANAHAN:
7        Q.  Please state your name for the record.
8        A.  Brian Alan Malcolm.
9        Q.  Officer Malcolm, are you currently
10 employed?
11       A.  Yes.
12       Q.  Who is your employer?
13       A.  The City of Wichita, the Wichita Police
14 Department.
15       Q.  How long have you been employed as a
16 police officer with the City of Wichita?
17       A.  Coming up on five years.
18       Q.  What is your current position within
19 the police department?
20       A.  Patrol officer.
21       Q.  Which bureau?
22       A.  Patrol North.
23       Q.  Have you ever held any other position
24 or rank within the police department?
25       A.  No, ma'am.

1        Q.  Have you always been with the North
2  Bureau?
3        A.  Yes.
4        Q.  Do you currently have a partner?
5        A.  No.
6        Q.  Back in June of 2020 did you have a
7  partner?
8        A.  I mean, I believe I did ride with
9  somebody quite a bit.
10       Q.  Who was that?
11       A.  Steve Abasolo.
12       Q.  Do you currently ride with someone?
13       A.  Off and on.
14       Q.  Is that always the same individual or
15 different individuals?
16       A.  It's different depending on staffing
17 and who shows up.
18       Q.  With your career path specifically can
19 you tell me how it is that you came to be a police
20 officer with the City of Wichita?
21       A.  I moved from Oklahoma and they were
22 hiring so I applied.
23       Q.  Were you a police officer in Oklahoma?
24       A.  No, I was not.
25       Q.  Is the City of Wichita the first

1  department in which you have been hired as a police
2  officer?
3        A.  Yes, ma'am.
4        Q.  What is your highest level of
5  education?
6        A.  Some college.
7        Q.  What is your date of birth?
8        A.  ⬛⬛/⬛⬛/⬛⬛
9        Q.  Do you understand that you are here
10 today appearing for this deposition pursuant to a
11 subpoena?
12       A.  Yes.
13       Q.  You and I have never met before;
14 correct?
15       A.  Correct.
16       Q.  I am an attorney for the defendant in
17 this case, which is SRKBS Hotel, LLC and they are
18 the owner of the Super 8 Motel located here in
19 Wichita.  Do you understand that?
20       A.  Yes.
21       Q.  Have you ever met Mr. Wilson before?
22       A.  No, I have not.
23       Q.  Have you ever had your deposition taken
24 before?
25       A.  I have not.

1        Q.  So just briefly, there's just a few
2  things to remember.  The first is that because the
3  court reporter is taking down everything that we
4  say, it's important that you and I go ahead and
5  talk in a question and answer format.  So even
6  though you might know what I'm going to say or I
7  might anticipate your answer, it makes her job
8  easier if we try not to speak over one another.
9        A.  Okay.
10       Q.  The other thing, give a verbal response
11 instead of nodding or shaking your head.  It also
12 makes her job a little bit easier.  All right?
13       A.  Yes.
14       Q.  The last thing, and she's reminded us,
15 is that if we talk nice and slow she'll make sure
16 she gets down what we're saying properly.  All
17 right?
18       A.  Okay.
19       Q.  Did you review anything in preparation
20 for your deposition here today?
21       A.  Briefly.
22       Q.  What did you review?
23       A.  I looked over my supplemental report
24 through e-mail and then just had basically a little
25 prep before or yeah, last week.

Page 10

1    (Whereupon Defendant's Exhibit C was
2  marked for purposes of identification.)
3    Q.  When you say that you looked over your
4  supplemental report, I'm going to hand you what has
5  been marked as Defendant's Exhibit C.  Do you
6  recognize that document?
7    A.  Yes.
8    Q.  Is that the report that you reviewed
9  prior to today?
10    A.  Yes.
11    Q.  Is that document representative of what
12  a supplemental report looks like when it's drafted
13  for the City of Wichita Police Department?
14    A.  Yes, prior to the new RMS.
15    Q.  What is the new RMS?
16    A.  The niche, I think it comes out a
17  little different.
18    Q.  Meaning that the computer system makes
19  it look --
20    A.  Yes.
21    Q.  -- different?  Did you review the full
22  police report made in connection with today's
23  deposition?
24    A.  No.
25    Q.  I am going to hand you now what has

Page 11

1  been marked as Defendant's Exhibit A.  Can you tell
2  me what this document is?
3    A.  Looks like the offense report.
4    Q.  What is an offense report?
5    A.  Called the general report, the Kansas
6  Standard Offense Report.
7    Q.  Is that a type of report that's created
8  when an incident occurs that requires response from
9  the Wichita Police Department?
10    A.  Yes.
11    Q.  Does that look like the Offense Report
12  that would have been created in regard to a
13  June 20, 2020 incident at the Super 8 Motel?
14    A.  Yes.
15    Q.  Do you understand that the deposition
16  we're here for today involves a shooting incident
17  that occurred at the Super 8 Motel on North Rock
18  Road?
19    A.  Yes.
20    Q.  Do you recall the date of that
21  incident?
22    A.  I'm looking at it.  June 20, 2020.
23    Q.  Even if you don't recall that by
24  memory, does that sound like an accurate date?
25    A.  Yes.

Page 12

1    Q.  Do you have any reason to dispute that?
2    A.  No.
3    Q.  At the time of that incident were you a
4  police officer with the City of Wichita?
5    A.  Yes.
6    Q.  Was your position that of patrol
7  officer, North Bureau?
8    A.  Yes.
9    Q.  Because that's always been your
10  position; correct?
11    A.  Correct.
12    Q.  Off the top of your head do you know
13  the address of the Super 8 Motel?
14    A.  Not off the top of my head.  3741 North
15  Rock Road.
16    Q.  Are you generally familiar with where
17  the Super 8 is located?
18    A.  Yes.
19    Q.  Have you been there before?
20    A.  Yes.
21    Q.  Prior to June 20th of 2020 had you been
22  to the Super 8 Motel?
23    A.  Yes.
24    Q.  Since the incident of June 20, 2020
25  have you been to the Super 8 Motel?

Page 13

1    A.  Yes.
2    Q.  What is 4th watch?
3    A.  It is the overnight shift for the
4  Wichita Police Department starting at 9:00 p.m. and
5  ending at 7:00 a.m.
6    Q.  On June 20, 2020 were you working 4th
7  shift?
8    A.  Yes.
9    Q.  4th watch?
10    A.  Yes.
11    Q.  Are you currently scheduled for 4th
12  watch?
13    A.  Yes.
14    Q.  Is that your primary shift?
15    A.  Yes.
16    Q.  What is Patrol North Bureau?
17    A.  North Wichita.
18    Q.  Have you ever worked in any of the
19  other bureaus as a patrol officer?
20    A.  Not assigned to any other bureau.  I
21  have been to other bureaus to work as a police
22  officer.
23    Q.  What type of training do you receive as
24  a patrol officer with the City of Wichita?
25    A.  You do a six-month police academy.

4 (Pages 10 - 13)

Page 14

1    Q.  Is there any type of ongoing training
2  within the department?
3    A.  Yes.
4    Q.  What is that?
5    A.  You are provided like you have a spring
6  mandatory, fall mandatory.  They just started
7  quarterly mandatory.
8    Q.  As a patrol officer do you receive any
9  type of special training on gangs?
10    A.  I do not.
11    Q.  You kind of seemed to qualify that so
12  what do you mean by I do not?
13    A.  I've read e-mails or bulletins.  I
14  mean, that kind -- I wouldn't consider it training.
15  I haven't been to like -- I don't even know what
16  the conference is called.
17    Q.  Gang conference?
18    A.  Yeah.  I haven't been to that.  I
19  haven't done any hours and hours of research on
20  gangs in Wichita or any of that but I have read.
21    Q.  As a patrol officer what are your
22  day-to-day duties and responsibilities while on
23  shift?
24    A.  Primarily answering 9-1-1 calls.  When
25  there's time, self-initiated activity, beat

Page 15

1  follow-up.  We're assigned to beats.  Follow up on
2  problems in your beat area.
3    Q.  Do you have a specific beat area within
4  the North Bureau?
5    A.  Yes.
6    Q.  What is that?
7    A.  Right now it is 49-beat.
8    Q.  Was that your beat as of June 20, 2020?
9    A.  No.
10    Q.  What was it then?
11    A.  It was 44-beat.
12    Q.  Do you recall when you graduated from
13  the police academy?
14    A.  February 8, 2019.
15    Q.  So would it be fair to say that in June
16  of 2020 you had been an officer with Wichita for
17  about a year and a half?
18    A.  Yes.
19    Q.  During that time period had you
20  exclusively worked 4th watch?
21    A.  Yes.
22    Q.  And you exclusively worked for the
23  North Bureau; correct?
24    A.  Correct.
25    Q.  What area does the 44-beat encompass?

Page 16

1    A.  It is 21st Street North.  Then you go
2  south to 13th Street north.  Then Hillside to
3  Hydraulic is my guess.
4    Q.  In June of 2020 would that have
5  encompassed the area where the Super 8 Motel was
6  located?
7    A.  No.  That would be 46-beat but it's not
8  unusual to respond to other beats in the bureau.
9    Q.  Do you recall responding to a call on
10  June 20, 2020 at the Super 8?
11    A.  Yes.
12    Q.  And so as I understand you correctly,
13  that would not necessarily have been your specific
14  beat but it still would have been within the North
15  Bureau?
16    A.  Correct.
17    Q.  At that point were you riding with
18  Officer Abasolo?
19    A.  Yes.
20    Q.  As we sit here today do you have any
21  level of recollection about the incident at the
22  Super 8 Motel?
23    A.  Yes.
24    Q.  Generally speaking, what is that level
25  of recollection?

Page 17

1    A.  It's probably very minimal.  I remember
2  arriving and I remember seeing some individuals
3  running, trying to stop those individuals; firearms
4  going off and then that's pretty much where it
5  stops for me.
6    Q.  When you arrive, do you know how long
7  it took you to arrive on scene after having
8  received the call?
9    A.  How long it took me to arrive on scene?
10    Q.  Correct.
11    A.  I do not.
12    Q.  Do you recall what time the call came
13  in?
14    A.  I do not, but it would be on my report.
15    Q.  Do you want to take a look at Exhibit
16  A?
17    A.  It says 3:02 in the morning.
18    Q.  Does it say what time you arrived on
19  scene?
20    A.  I do not see an On Scene.
21    Q.  When you arrived on scene do you know
22  how many individuals were in the parking lot?
23    A.  I do not.
24    Q.  More or less than five?
25    A.  I couldn't recall.  I mean, when I look

5 (Pages 14 - 17)

Page 18

1  back on it, all I can remember seeing were those
2  two were being directed, two people running and
3  then my focus kind of went on that.
4      Q.  All right.  If we look at Defendant's
5  Exhibit C, which you have identified as your
6  supplemental report, it looks like this is a
7  summation about the incident written by you; is
8  that fair?
9      A.  Yes.
10     Q.  Did you author the narrative section of
11 Defendant's Exhibit A?
12     A.  No.
13     Q.  Who authored that?
14     A.  Officer Abasolo.
15     Q.  So when an officer responds but is not
16 the officer that authors the report do they then
17 issue the supplemental report?
18     A.  Yes.
19     Q.  So does this contain -- is this an
20 accurate summation of what you observed at the
21 scene?
22     A.  Yes.
23     Q.  But it's listed as a supplemental
24 because you weren't the authoring officer; fair?
25     A.  Correct.

Page 19

1      Q.  This reads, "Upon my arrival we pulled
2  into the east entrance on the south side of the
3  Super 8 and we were directed by a male in the
4  parking lot of a victim on the west side of the
5  building."  Is that accurate, to your knowledge?
6      A.  Yes.
7      Q.  "At this time we drove our patrol car
8  to the west side where I saw two males running
9  southbound east of the parking lot."  Does that
10 match your recollection?
11     A.  Yes.
12     Q.  And it says, "I heard one gunshot."  Is
13 that accurate?
14     A.  Correct.
15     Q.  Is that the only gunshot that you heard
16 while at the scene?
17     A.  Yes.
18     Q.  It says, "I approached a male
19 identified as Marion Norwood, who advised he was
20 shot on the lower left leg."  Is that accurate?
21     A.  Yes.
22     Q.  Prior to June 20th of 2020 did you know
23 Marion Norwood?
24     A.  No.
25     Q.  Had you ever had any interaction with

Page 20

1  Marion Norwood prior to June 20th of 2020?
2      A.  I don't recall.
3      Q.  As you arrived on scene and saw Mr.
4  Norwood, did anything register to you as having
5  known him to be a member of a gang?
6      A.  No.  I'm not -- I don't have that
7  memory like some officers do like hear a name.
8      Q.  It reads, "At this time I asked Marion
9  who was shooting.  Marion advised he did not know
10 who was shooting first, but he returned fire in
11 self-defense.  Marion stated he saw two guns, which
12 he advised were his, over the wall next to where we
13 located both males."  Is that an accurate
14 representation of what you recall?
15     A.  Yes.
16     Q.  It says, "Marion kept asking if his
17 friend, Jaylen Thomas, was okay."  Is Jaylen Thomas
18 the other individual that you saw when arrived on
19 scene?
20     A.  I can't remember who the other
21 individual was.  I just off that, I'm going to
22 assume that's who he was talking about was the
23 other male that he was running with.
24     Q.  Did you have any knowledge as to who
25 Jaylen Thomas was prior to June 20 of 2020?

Page 21

1      A.  I don't believe so.
2      Q.  Did you then accompany Marion Norwood
3  to the hospital?
4      A.  Yes.
5      Q.  Did you eventually put Marion under
6  arrest?
7      A.  I don't recall.  I would have to look
8  at that.
9      Q.  Do you remember speaking with Marion as
10 to what had occurred that evening?
11     A.  Yes.
12     Q.  What did he tell you?
13     A.  Without looking at that --
14     Q.  I'll read that he said, "Someone
15 started shooting and that he lost sight of Jaylen
16 Thomas."  Is that fair?
17     A.  Yes.
18     Q.  To your knowledge, did that shooting
19 take place in the parking lot of the Super 8?
20     A.  Yes.
21     Q.  Do you have any knowledge as to which
22 individual used firearms?
23     A.  No.
24     Q.  Do you have any knowledge as to whether
25 Marion used a firearm?

Page 22

1    A.  Yes.
2    Q.  What about Jaylen Thomas?
3    A.  No.
4    Q.  Are you aware of any individuals who
5    have been charged in connection with the incident?
6    A.  No.
7    Q.  Are you aware of whether any
8    individuals have been convicted in connection with
9    the incident?
10    A.  No.
11    Q.  Are you aware of any individuals who
12    have pled guilty in connection with the incident?
13    A.  No.
14    Q.  As we sit here today do you have any
15    knowledge as to whether or not Jaylen Thomas has
16    any gang affiliation?
17    A.  No, I do not.
18    Q.  Do you know who Marion Norwood is?
19    A.  Yes.
20    Q.  Other than -- that's a bad question.
21    Do you have any information as to whether Marion
22    Norwood is associated with a gang?
23    A.  No.
24    Q.  Do you know who Malik Banks is?
25    A.  I do not.

Page 23

1    Q.  Do you know who Torrance Shaw is?
2    A.  No.
3    Q.  Do you know who Deonte Minnis is?
4    A.  No.
5    Q.  Do you have any indication whether
6    Deonte Minnis is associated with a gang?
7    A.  I do not.
8    Q.  What about Torrance Shaw?
9    A.  No.
10    Q.  What about Malik Banks?
11    A.  No.
12    Q.  Following the incident did you continue
13    to investigate what had occurred?
14    A.  No.
15    Q.  Was your last involvement in the
16    incident taking Mr. Norwood to the hospital?
17    A.  Yes.  I do believe I arrived back on
18    scene but in a scene security capacity.
19    Q.  Did you review any of the video footage
20    from the incident?
21    A.  I don't recall.  I feel like I may
22    have.  I haven't recently but -- I can't recall
23    whether I did after leaving or not.
24    Q.  I'm going to hand you right there what
25    have been marked as Plaintiff's Exhibits 1 and 2.

Page 24

1    Can you tell me what those are?
2    A.  Looks like the Super 8 security camera
3    shots.
4    Q.  Does looking at those still shots
5    refresh your memory as to whether or not you
6    reviewed security footage?
7    A.  Yes.  I don't believe I did review this
8    footage.
9    Q.  Can you identify any of the individuals
10    in that footage?
11    A.  No.
12    Q.  Did you interview any of the employees
13    from the Super 8?
14    A.  No.
15    Q.  Did you interview anyone other than Mr.
16    Norwood?
17    A.  I don't believe so.
18    Q.  In interviewing Mr. Norwood were you
19    able to determine why shots were fired?
20    A.  No, other than his statement of
21    self-defense.  No, I don't recall what he said or
22    if he made a statement of why he was shooting in
23    self-defense.
24    Q.  Were you under the impression that an
25    argument had ensued?

Page 25

1    A.  Yes.
2    Q.  I guess a different way of asking this
3    is, did your investigation lead to believe that
4    Mr. Norwood had gotten into some verbal or physical
5    altercation with another individual that caused
6    shots to be fired?
7    MR. WILSON: Object to form, foundation.
8    You can answer.
9    A.  I don't recall ever learning how the
10    whole incident started.  Yeah, I don't know who the
11    primary aggressors were in the incident.
12    Q.  (By Ms. Banahan) Did you ever learn who
13    had in fact shot Mr. Norwood?
14    A.  No.
15    Q.  Do you know anything about the identity
16    of the individual who fired the gun at Mr. Norwood?
17    A.  No.
18    Q.  Or who Mr. Norwood claims he needed to
19    defend himself against?
20    A.  No.
21    Q.  Based on the information that you did
22    gather at the scene, did you make any determination
23    as to what had happened?
24    A.  No, I don't recall.  I'm sure at the
25    time I had scenarios in my head but I don't

7 (Pages 22 - 25)

Page 26

1  remember what they would be.
2      Q.  I guess my question is, do you recall
3  if you would classify this as a random shooting or
4  as an argument between individuals that escalated
5  into a shooting?
6      A.  I think, yeah.  I think we were
7  operating under there was something that happened
8  at the Super 8 and an argument ensued by known
9  people and these things occurred.
10      Q.  Was it your understanding that whatever
11  did occur happened outside the Super 8 Motel?
12      A.  Correct.  As far as I know, everything
13  I had involvement with was outside the Super 8.
14      Q.  Meaning that is it your understanding
15  that shots were not fired inside the hotel?
16      A.  Correct.  I never learned that
17  information.
18      Q.  Were you involved in any type of crime
19  scene analysis inside of the hotel?
20      A.  No.
21      Q.  Were you involved with speaking to
22  Maella Blalock, who is the plaintiff in this
23  matter?
24      A.  No.
25      Q.  Do you have any information with what

Page 27

1  happened with Maella Blalock?
2      A.  No, other than that she was shot in
3  both feet.
4      Q.  Do you recall as part of your
5  investigation if you made any determination as to
6  whether the individuals were members of either the
7  Crips or the Bloods?
8      A.  I'm sorry, can you say again?
9      Q.  Sure.  As part of your investigation,
10  did you make any determination as to whether any of
11  the persons involved were members of either the
12  Crips or the Bloods?
13      A.  No.
14      Q.  As a police officer do you have any way
15  of identifying if a person is a member of either
16  the Crips or the Bloods?
17      A.  Yes.
18      Q.  What is the way that you determine
19  that?
20      A.  This would be very layman because I'm
21  not proficient in gang activity or anything, but
22  colors can indicate, tattoos, hand signs often.
23      Q.  What are the colors?
24      A.  Red and blue for the two that you were
25  talking about, the Crips and Bloods.

Page 28

1      Q.  Other than the specific color, is that
2  color accompanied by any type of other signal that
3  that person is a member of a gang?
4      A.  It could be.
5      Q.  For instance, in your experience, are
6  the shirts -- if someone is wearing a red shirt,
7  does it say Bloods on the front of it?
8      A.  No.
9      Q.  Would you agree with me then that for a
10  lay person color alone is not enough to indicate
11  whether someone is a gang member?
12      A.  Yes.
13      Q.  In fact, I think if I understand you
14  correctly, as a police officer color alone wouldn't
15  be enough even for you to identify them as being
16  associated with a gang; fair?
17      A.  Yes.
18      Q.  Because it sounds like some police
19  officers who have training are more proficient than
20  others in gang activity; fair?
21      A.  Correct.
22      Q.  And so for a lay person appearance
23  alone is not an indicator for gang activity; fair?
24      A.  Correct.
25      Q.  I think that's all I have for you,

Page 29

1  Officer Malcolm.  I appreciate your time.
2              CROSS EXAMINATION
3  BY MR. WILSON:
4      Q.  I just have a few follow-up for you.
5  Do you know the colors for the GD Folk?
6      A.  No, I do not.
7      Q.  We talked a little bit about Jaylen
8  Thomas and Mr. Norwood.  If you saw a picture of
9  them do you think you would recognize them?
10      A.  No.  I was really thinking I might
11  recognize at least Norwood but I couldn't point him
12  out.
13      Q.  Well, what I'm going to do, I didn't
14  bring a printed copy with me.  I'm going to show
15  you page 82 from our retained expert, specifically
16  the still shot in the bottom right-hand corner.
17  This is just two individuals that are in the
18  lobby -- I don't know if it's a lobby or the area
19  of the elevators on the Super 8.  I'm wondering, do
20  you recognize either of the two individuals and
21  it's fine if you don't.  I'm just asking your
22  honest recollection.
23      A.  No.
24      Q.  When is the last time you responded to
25  the Super 8 for a call?

8 (Pages 26 - 29)

Page 30

1    A.  I don't recall.  It was -- I mean, I
2  can give you --
3    Q.  Whatever specificity you can give me.
4    A.  The last couple of months.
5    Q.  If I remember your testimony correctly,
6  your beat has never been in that area of the Super
7  8 even though you respond to calls there sometimes?
8    A.  Yes.
9    Q.  Did I hear you right earlier; you don't
10  have any training in gangs or identifying gang
11  members?
12    A.  Correct.
13    Q.  The last thing I wanted to ask you,
14  back at the time the shooting happened, I believe
15  it was Officer Ryan Schneider was the community
16  policing officer for this.  I think he's a
17  detective now, Detective Schneider?
18    A.  Yes.
19    Q.  We took Detective Schneider's
20  deposition and he told us a couple of things.  I
21  want to read them to you and just see if you agree
22  with them or disagree with them or anything else.
23  He told us that one, that there was the Comfort Inn
24  and Super 8 right next to each other and he said,
25  quote, "I did not have as many issues with the

Page 31

1  Comfort Inn as I did with the Super 8 even though I
2  believe they were owned by the same management
3  company."  Do you agree with that statement or have
4  any other reason disagree with it?
5    A.  Yes, I agree with that.
6    Q.  And I asked Detective Schneider, "So
7  like the level of crime on the Super 8 property,
8  when you were the community police officer, can you
9  tell me one way or the other whether it was higher
10  than the other hotels in the area, lower, about the
11  same," and his answer was quote, "I would say it
12  was probably higher than the other hotels in the
13  area."
14    MS. BANAHAN: I'll object to the form.
15    Q.  (By Mr. Wilson) Subject to her
16  objection can you state --
17    A.  I couldn't answer that.
18    Q.  -- any reason to disagree with that
19  even if you can't agree with it?
20    A.  I don't know what the small area for
21  him is or the area he's talking about.
22    Q.  Fair enough.  That's all I have for
23  you.
24    MR. BANAHAN: That's all I have as well.
25    MR. HOUGHTON: We'll read and sign.

Page 32

1    (Whereupon deposition proceedings were
2  concluded at 2:52 p.m.)

Page 33

1  I have read or have had read to me the foregoing
2  testimony recorded on pages 6 to 32, inclusive, and
3  the same is true and correct to my knowledge and
4  belief.
5
6  _____
7    BRIAN A. MALCOLM
8
9  STATE OF_____)
10  _____COUNTY)
11  Subscribed and sworn to before me, the undersigned
12  authority, this___day of_____,
13  2023.
14
15  _____
16  Notary Public
17
18  _____
19  (Commission Expires)
20
21
22
23
24
25  Job No. CS6045267
25  Blalock vs SRKBS Hotel, LLC

9 (Pages 30 - 33)

Page 34

1              CERTIFICATE
2    STATE OF KANSAS)
3    SEDGWICK COUNTY)
4        I, Kathy R. Bonfiglio, a Certified Shorthand
5    Reporter for the State of Kansas, do hereby certify
6    that the within-named witness was by me first duly
7    sworn to testify the truth, that the testimony
8    given in response to the questions propounded, as
9    herein set forth, was first taken in machine
10   shorthand and reduced to writing with
11   computer-aided transcription, and is a true and
12   correct record of the testimony given by the
13   witness. I certify that review of the testimony
14   was requested by the parties. If any changes are
15   made by the deponent during the time period
16   allowed, they will be appended to the transcript.
17       I further certify that I am not a relative or
18   employee of attorney of any of the parties, or
19   financially interested in the action.
20       WITNESS my hand and official seal at Wichita,
21   Sedgwick County, Kansas, this 21st day
22   of August, 2023.
23
24           Kathy R. Bonfiglio, CSR RPR
25              VERITEXT LEGAL SOLUTIONS

Page 35

1    Eric Houghton, Esq.
2    ehoughton@wichita.gov
3            August 21, 2023
4    RE:   Blalock, Maella v. SBKBS Hotel, LLC
5      8/14/2023, Brian Malcolm (#6045267)
6      The above-referenced transcript is available for
7    review.
8      Within the applicable timeframe, the witness should
9    read the testimony to verify its accuracy. If there are
10   any changes, the witness should note those with the
11   reason, on the attached Errata Sheet.
12     The witness should sign the Acknowledgment of
13   Deponent and Errata and return to the deposing attorney.
14   Copies should be sent to all counsel, and to Veritext at
15   erratas-cs@veritext.com
16
17     Return completed errata within 30 days from
18   receipt of testimony.
19     If the witness fails to do so within the time
20   allotted, the transcript may be used as if signed.
21
22        Yours,
23        Veritext Legal Solutions
24
25

Page 36

1    Blalock, Maella v. SBKBS Hotel, LLC
2    Brian Malcolm (#6045267)
3         E R R A T A   S H E E T
4    PAGE_____ LINE_____ CHANGE_____
5    _____
6    REASON_____
7    PAGE_____ LINE_____ CHANGE_____
8    _____
9    REASON_____
10   PAGE_____ LINE_____ CHANGE_____
11   _____
12   REASON_____
13   PAGE_____ LINE_____ CHANGE_____
14   _____
15   REASON_____
16   PAGE_____ LINE_____ CHANGE_____
17   _____
18   REASON_____
19   PAGE_____ LINE_____ CHANGE_____
20   _____
21   REASON_____
22
23   _____  _____
24   Brian Malcolm                  Date
25

Veritext Legal Solutions
800-567-8658                                      973-410-4098

**[& - appearing]**                                                        Page 1

| & | | | |
|---|---|---|---|

**&**

**&**   2:13

**0**

**02552**   1:7

**1**

**1**   23:25
**10**   5:4
**13th**   1:20 2:24
  16:2
**14**   1:14
**17979**   34:23
**1984**   8:8

**2**

**2**   4:2 23:25
**20**   11:13,22
  12:24 13:6
  15:8 16:10
  20:25
**2019**   15:14
**2020**   7:6 11:13
  11:22 12:21,24
  13:6 15:8,16
  16:4,10 19:22
  20:1,25
**2023**   1:14
  33:13 34:22
  35:3
**20c037022**   5:4
**20th**   12:21
  19:22 20:1
**21**   1:7 35:3
**211**   2:14
**21st**   16:1 34:21

**24**   8:8
**2500**   2:14
**268-4335**   3:2
**268-4681**   3:1
**29**   4:7
**2:18**   1:15
**2:52**   32:2

**3**

**30**   35:17
**314**   2:16,17
**316**   2:7,8 3:1,2
**32**   33:2
**3241**   2:5
**34**   4:18
**3741**   12:14
**3:02**   17:17

**4**

**4**   4:3
**425-0414**   2:8
**44**   15:11,25
**455**   1:20 2:24
**46**   16:7
**49**   15:7
**4th**   13:2,6,9,11
  15:20

**5**

**552-4023**   2:16

**6**

**6**   4:6 33:2
**6045267**   35:5
  36:2
**63102**   2:15
**67202**   1:21
  2:25

**67226**   2:6

**7**

**7:00**   13:5

**8**

**8**   8:18 11:13,17
  12:13,17,22,25
  15:14 16:5,10
  16:22 19:3
  21:19 24:2,13
  26:8,11,13
  29:19,25 30:7
  30:24 31:1,7
**8/14/2023**   35:5
**82**   29:15
**884-4423**   2:17

**9**

**9-1-1**   14:24
**977-9999**   2:7
**9:00**   13:4

**a**

**a.m.**   13:5
**abasolo**   7:11
  16:18 18:14
**able**   24:19
**above**   35:6
**academy**   13:25
  15:13
**accompanied**
  28:2
**accompany**
  21:2
**accuracy**   35:9
**accurate**   11:24
  18:20 19:5,13

  19:20 20:13
**acknowledg...**
  35:12
**action**   34:19
**activity**   14:25
  27:21 28:20,23
**address**   12:13
**advised**   19:19
  20:9,12
**affiliation**
  22:16
**aggressors**
  25:11
**agree**   28:9
  30:21 31:3,5
  31:19
**ahead**   9:4
**aided**   34:11
**alan**   6:8
**allotted**   35:20
**allowed**   34:16
**altercation**
  25:5
**analysis**   26:19
**answer**   9:5,7
  25:8 31:11,17
**answering**
  14:24
**anticipate**   9:7
**appearance**
  28:22
**appearances**
  2:1 4:2
**appearing**   8:10

**[appended - community]**

**appended**
   34:16
**applicable**   35:8
**applied**   7:22
**appreciate**   29:1
**approached**
   19:18
**area**   15:2,3,25
   16:5 29:18
   30:6 31:10,13
   31:20,21
**argument**
   24:25 26:4,8
**arrest**   21:6
**arrival**   19:1
**arrive**   17:6,7,9
**arrived**   17:18
   17:21 20:3,18
   23:17
**arriving**   17:2
**asked**   20:8 31:6
**asking**   20:16
   25:2 29:21
**assigned**   13:20
   15:1
**associated**
   22:22 23:6
   28:16
**assume**   20:22
**attached**   35:11
**attorney**   2:22
   8:16 34:18
   35:13
**august**   1:14
   34:22 35:3

**author**   18:10
**authored**   18:13
**authoring**
   18:24
**authority**   33:12
**authors**   18:16
**available**   35:6
**aware**   22:4,7
   22:11

**b**

**b**   2:12
**back**   7:6 18:1
   23:17 30:14
**bad**   22:20
**banahan**   2:12
   4:6 6:6 25:12
   31:14,24
**banks**   22:24
   23:10
**based**   25:21
**basically**   9:24
**beat**   14:25 15:2
   15:3,7,8,11,25
   16:7,14 30:6
**beats**   15:1 16:8
**behalf**   2:2,11
   2:20
**belief**   33:4
**believe**   7:8 21:1
   23:17 24:7,17
   25:3 30:14
   31:2
**birth**   8:7
**bit**   7:9 9:12
   29:7

**blalock**   1:5
   26:22 27:1
   33:25 35:4
   36:1
**bloods**   27:7,12
   27:16,25 28:7
**blue**   27:24
**bonfiglio**   1:25
   34:4,24
**bottom**   29:16
**brian**   1:12 4:5
   6:1,8 33:7 35:5
   36:2,24
**briefly**   9:1,21
**bring**   29:14
**broadway**   2:14
**building**   19:5
**bulletins**   14:13
**bureau**   6:21
   7:2 12:7 13:16
   13:20 15:4,23
   16:8,15
**bureaus**   13:19
   13:21

**c**

**c**   5:3 10:1,5
   18:5
**call**   16:9 17:8
   17:12 29:25
**called**   11:5
   14:16
**calls**   14:24 30:7
**camera**   24:2
**capacity**   23:18

**car**   19:7
**career**   7:18
**case**   1:7 5:4
   8:17
**caused**   25:5
**certificate**   4:18
   34:1
**certified**   34:4
**certify**   34:5,13
   34:17
**change**   36:4,7
   36:10,13,16,19
**changes**   34:14
   35:10
**charged**   22:5
**city**   1:3,19 2:20
   2:22 6:13,16
   7:20,25 10:13
   12:4 13:24
**claims**   25:18
**classify**   26:3
**college**   8:6
**color**   28:1,2,10
   28:14
**colors**   27:22,23
   29:5
**comes**   10:16
**comfort**   30:23
   31:1
**coming**   6:17
**commission**
   33:19
**community**
   30:15 31:8

| | | | |
|---|---|---|---|
| **company** 31:3 | **crime** 26:18 | 13:4 14:2 | **drafted** 10:12 |
| **completed** 35:17 | 31:7 | **depending** 7:16 | **drove** 19:7 |
| **computer** 10:18 34:11 | **crips** 27:7,12 27:16,25 | **deponent** 34:15 35:13 | **duly** 6:2 34:6 |
| **concluded** 32:2 | **cross** 29:2 | **deposing** 35:13 | **duties** 14:22 |
| **conference** 14:16,17 | **cs** 35:15 | **deposition** 1:11 8:10,23 9:20 | **e** |
| **connection** 10:22 22:5,8 22:12 | **cs6045267** 1:24 33:24 | 10:23 11:15 30:20 32:1 | **e** 9:24 14:13 36:3,3,3 |
| **consider** 14:14 | **csr** 1:25,25 34:24 | **deputy** 2:22 | **earlier** 30:9 |
| **contain** 18:19 | **current** 6:18 | **description** 5:2 | **easier** 9:8,12 |
| **continue** 23:12 | **currently** 6:9 7:4,12 13:11 | **detective** 30:17 30:17,19 31:6 | **east** 19:2,9 |
| **convicted** 22:8 | **custody** 4:20 | **determination** 25:22 27:5,10 | **education** 8:5 |
| **copies** 35:14 | **cv** 1:7 | **determine** 24:19 27:18 | **ehoughton** 3:3 35:2 |
| **copy** 29:14 | **d** | **devaughn** 2:4 | **either** 27:6,11 27:15 29:20 |
| **corner** 29:16 | **dagestad** 2:12 | **devaughnjam...** 2:9 | **elevators** 29:19 |
| **correct** 8:14,15 12:10,11 15:23 15:24 16:16 17:10 18:25 19:14 26:12,16 28:21,24 30:12 33:3 34:12 | **date** 8:7 11:20 11:24 36:24 | **different** 7:15 7:16 10:17,21 25:2 | **employed** 6:10 6:15 |
| | **day** 14:22,22 33:12 34:21 | **direct** 6:5 | **employee** 34:18 |
| | **days** 35:17 | **directed** 18:2 19:3 | **employees** 24:12 |
| | **defend** 25:19 | **disagree** 30:22 31:4,18 | **employer** 6:12 |
| | **defendant** 1:9 2:11 5:3 8:16 | **dispute** 12:1 | **encompass** 15:25 |
| **correctly** 16:12 28:14 30:5 | **defendant's** 10:1,5 11:1 18:4,11 | **district** 1:1,2 | **encompassed** 16:5 |
| **counsel** 35:14 | **defense** 20:11 24:21,23 | **dixon** 2:13 | **ensued** 24:25 26:8 |
| **county** 33:10 34:3,21 | **deonte** 23:3,6 | **dixon.com** 2:18 | **entrance** 19:2 |
| **couple** 30:4,20 | **department** 1:19 2:23 6:14 6:19,24 8:1 10:13 11:9 | **document** 10:6 10:11 11:2 | **eric** 35:1 |
| **court** 1:1 4:21 9:3 | | | **erik** 2:21 |
| **created** 11:7,12 | | | **errata** 35:11,13 35:17 |
| | | | **erratas** 35:15 |

**escalated** 26:4
**esq** 35:1
**evans** 2:13,18
**evening** 21:10
**eventually** 21:5
**examination**
    4:5 6:5 29:2
**exclusively**
    15:20,22
**exhibit** 4:20
    10:1,5 11:1
    17:15 18:5,11
**exhibits** 4:3,21
    5:1 23:25
**experience** 28:5
**expert** 29:15
**expires** 33:19

**f**

**fact** 25:13
    28:13
**fails** 35:19
**fair** 15:15 18:8
    18:24 21:16
    28:16,20,23
    31:22
**fall** 14:6
**familiar** 12:16
**far** 26:12
**fax** 2:8,17 3:2
**february** 15:14
**feel** 23:21
**feet** 27:3
**financially**
    34:19

**fine** 29:21
**fire** 20:10
**firearm** 21:25
**firearms** 17:3
    21:22
**fired** 24:19
    25:6,16 26:15
**first** 6:2 7:25
    9:2 20:10 34:6
    34:9
**five** 6:17 17:24
**floor** 1:20 2:24
**focus** 18:3
**folk** 29:5
**follow** 15:1,1
    29:4
**following** 23:12
**footage** 23:19
    24:6,8,10
**foregoing** 33:1
**form** 25:7
    31:14
**format** 9:5
**forth** 34:9
**foundation**
    25:7
**friend** 20:17
**front** 28:7
**full** 10:21
**further** 34:17

**g**

**gang** 14:17
    20:5 22:16,22
    23:6 27:21
    28:3,11,16,20

28:23 30:10
**gangs** 14:9,20
    30:10
**gather** 25:22
**gd** 29:5
**general** 11:5
**generally** 12:16
    16:24
**give** 9:10 30:2,3
**given** 34:8,12
**go** 9:4 16:1
**going** 9:6 10:4
    10:25 17:4
    20:21 23:24
    29:13,14
**gotten** 25:4
**graduated**
    15:12
**guess** 16:3 25:2
    26:2
**guilty** 22:12
**gun** 25:16
**guns** 20:11
**gunshot** 19:12
    19:15

**h**

**h** 36:3
**half** 15:17
**hall** 1:19
**hand** 10:4,25
    23:24 27:22
    29:16 34:20
**happened**
    25:23 26:7,11
    27:1 30:14

**head** 9:11
    12:12,14 25:25
**hear** 20:7 30:9
**heard** 19:12,15
**held** 6:23
**higher** 31:9,12
**highest** 8:4
**hillside** 16:2
**hired** 8:1
**hiring** 7:22
**honest** 29:22
**hospital** 21:3
    23:16
**hotel** 1:8 8:17
    26:15,19 33:25
    35:4 36:1
**hotels** 31:10,12
**houghton** 2:21
    31:25 35:1
**hours** 14:19,19
**hydraulic** 16:3

**i**

**identification**
    10:2
**identified** 18:5
    19:19
**identify** 24:9
    28:15
**identifying**
    27:15 30:10
**identity** 25:15
**important** 9:4
**impression**
    24:24

**[incident - made]** Page 5

**incident** 11:8
  11:13,16,21
  12:3,24 16:21
  18:7 22:5,9,12
  23:12,16,20
  25:10,11
**inclusive** 33:2
**index** 4:1,3 5:1
**indicate** 27:22
  28:10
**indication** 23:5
**indicator** 28:23
**individual** 7:14
  20:18,21 21:22
  25:5,16
**individuals**
  7:15 17:2,3,22
  22:4,8,11 24:9
  26:4 27:6
  29:17,20
**information**
  5:3 22:21
  25:21 26:17,25
**initiated** 14:25
**injury** 2:4
**inn** 30:23 31:1
**inside** 26:15,19
**instance** 28:5
**interaction**
  19:25
**interested**
  34:19
**interview** 24:12
  24:15

**interviewing**
  24:18
**investigate**
  23:13
**investigation**
  25:3 27:5,9
**involved** 26:18
  26:21 27:11
**involvement**
  23:15 26:13
**involves** 11:16
**issue** 18:17
**issues** 30:25

**j**

**james** 2:4
**january** 8:8
**jaylen** 20:17,17
  20:25 21:15
  22:2,15 29:7
**jeffrey** 2:3
**job** 1:24 9:7,12
  33:24
**june** 7:6 11:13
  11:22 12:21,24
  13:6 15:8,15
  16:4,10 19:22
  20:1,25
**jwilson** 2:9

**k**

**kansas** 1:2,3,3
  1:21 2:6,20,25
  11:5 34:2,5,21
**kathy** 1:25 34:4
  34:24

**kbanahan** 2:18
**kept** 20:16
**kerry** 2:12
**kind** 14:11,14
  18:3
**know** 9:6 12:12
  14:15 17:6,21
  19:22 20:9
  22:18,24 23:1
  23:3 25:10,15
  26:12 29:5,18
  31:20
**knowledge**
  19:5 20:24
  21:18,21,24
  22:15 33:3
**known** 20:5
  26:8
**ks** 1:25

**l**

**law** 2:23
**lawyers** 2:4
**lay** 28:10,22
**layman** 27:20
**lead** 25:3
**learn** 25:12
**learned** 26:16
**learning** 25:9
**leaving** 23:23
**left** 19:20
**leg** 19:20
**legal** 34:25
  35:23
**level** 8:4 16:21
  16:24 31:7

**line** 36:4,7,10
  36:13,16,19
**listed** 18:23
**little** 9:12,24
  10:17 29:7
**llc** 1:8 2:13
  8:17 33:25
  35:4 36:1
**lobby** 29:18,18
**located** 8:18
  12:17 16:6
  20:13
**long** 6:15 17:6
  17:9
**look** 10:19
  11:11 17:15,25
  18:4 21:7
**looked** 9:23
  10:3
**looking** 11:22
  21:13 24:4
**looks** 10:12
  11:3 18:6 24:2
**lost** 21:15
**lot** 17:22 19:4,9
  21:19
**louis** 2:15
**lower** 19:20
  31:10

**m**

**ma'am** 6:25 8:3
**machine** 34:9
**made** 10:22
  24:22 27:5
  34:15

**[maella - patrol]**

maella  1:5 26:22 27:1 35:4 36:1
mail  9:24
mails  14:13
main  1:20 2:24
make  9:15 25:22 27:10
makes  9:7,12 10:18
malcolm  1:12 4:5 6:1,8,9 29:1 33:7 35:5 36:2,24
male  19:3,18 20:23
males  19:8 20:13
malik  22:24 23:10
management  31:2
mandatory  14:6,6,7
marion  19:19 19:23 20:1,8,9 20:11,16 21:2 21:5,9,25 22:18,21
marked  5:2 10:2,5 11:1 23:25
match  19:10
matter  26:23

mean  7:8 14:12 14:14 17:25 30:1
meaning  10:18 26:14
member  20:5 27:15 28:3,11
members  27:6 27:11 30:11
memory  11:24 20:7 24:5
met  8:13,21
minimal  17:1
minnis  23:3,6
missouri  2:15
mo  1:25
month  13:25
months  30:4
morning  17:17
motel  8:18 11:13,17 12:13 12:22,25 16:5 16:22 26:11
moved  7:21

**n**

name  6:7 20:7
named  34:6
narrative  18:10
necessarily  16:13
needed  25:18
never  8:13 26:16 30:6
new  10:14,15

nice  9:15
niche  10:16
nodding  9:11
north  1:20 2:5 2:14,24 6:22 7:1 11:17 12:7 12:14 13:16,17 15:4,23 16:1,2 16:14
norwood  19:19 19:23 20:1,4 21:2 22:18,22 23:16 24:16,18 25:4,13,16,18 29:8,11
notary  33:16
note  35:10
number  5:2

**o**

oath  6:2
object  25:7 31:14
objection  31:16
observed  18:20
occur  26:11
occurred  11:17 21:10 23:13 26:9
occurs  11:8
offense  11:3,4,6 11:11
officer  6:9,16 6:20 7:20,23 8:2 12:4,7 13:19,22,24

14:8,21 15:16 16:18 18:14,15 18:16,24 27:14 28:14 29:1 30:15,16 31:8
officers  20:7 28:19
official  34:20
okay  9:9,18 20:17
oklahoma  7:21 7:23
ongoing  14:1
operating  26:7
outside  26:11 26:13
overnight  13:3
owned  31:2
owner  8:18

**p**

p.m.  1:15 13:4 32:2
page  29:15 36:4,7,10,13,16 36:19
pages  33:2
parking  17:22 19:4,9 21:19
part  27:4,9
parties  34:14 34:18
partner  7:4,7
path  7:18
patrol  6:20,22 12:6 13:16,19

**[patrol - responding]**

13:24 14:8,21
19:7
**people** 18:2
26:9
**period** 15:19
34:15
**person** 27:15
28:3,10,22
**persons** 27:11
**physical** 25:4
**picture** 29:8
**place** 21:19
**plaintiff** 1:6 2:2
26:22
**plaintiff's**
23:25
**please** 6:7
**pled** 22:12
**point** 16:17
29:11
**police** 1:19 6:13
6:16,19,24
7:19,23 8:1
10:13,22 11:9
12:4 13:4,21
13:25 15:13
27:14 28:14,18
31:8
**policing** 30:16
**position** 6:18
6:23 12:6,10
**prep** 9:25
**preparation**
9:19

**pretty** 17:4
**primarily**
14:24
**primary** 13:14
25:11
**printed** 29:14
**prior** 10:9,14
12:21 19:22
20:1,25
**probably** 17:1
31:12
**problems** 15:2
**proceedings**
32:1
**proficient**
27:21 28:19
**properly** 9:16
**property** 31:7
**propounded**
34:8
**provided** 14:5
**public** 33:16
**pulled** 19:1
**purposes** 10:2
**pursuant** 8:10
**put** 21:5

**q**

**qualify** 14:11
**quarterly** 14:7
**question** 9:5
22:20 26:2
**questions** 34:8
**quite** 7:9
**quote** 30:25
31:11

**r**

**r** 1:25 34:4,24
36:3,3
**random** 26:3
**rank** 6:24
**read** 14:13,20
21:14 30:21
31:25 33:1,1
35:9
**reads** 19:1 20:8
**really** 29:10
**reason** 12:1
31:4,18 35:11
36:6,9,12,15,18
36:21
**recall** 11:20,23
15:12 16:9
17:12,25 20:2
20:14 21:7
23:21,22 24:21
25:9,24 26:2
27:4 30:1
**receipt** 35:18
**receive** 13:23
14:8
**received** 17:8
**recently** 23:22
**recognize** 10:6
29:9,11,20
**recollection**
16:21,25 19:10
29:22
**record** 6:7
34:12

**recorded** 33:2
**red** 27:24 28:6
**reduced** 34:10
**referenced** 35:6
**refresh** 24:5
**regard** 11:12
**register** 20:4
**relative** 34:17
**remember** 9:2
17:1,2 18:1
20:20 21:9
26:1 30:5
**reminded** 9:14
**report** 5:4 9:23
10:4,8,12,22
11:3,4,5,6,7,11
17:14 18:6,16
18:17
**reporter** 4:21
9:3 34:5
**reporter's** 4:18
**representation**
20:14
**representative**
10:11
**requested**
34:14
**requires** 11:8
**research** 14:19
**respond** 16:8
30:7
**responded**
29:24
**responding**
16:9

| | | | |
|---|---|---|---|
| **responds** 18:15 | **saying** 9:16 | **shift** 13:3,7,14 | **sounds** 28:18 |
| **response** 9:10 | **says** 17:17 |   14:23 | **south** 16:2 19:2 |
|   11:8 34:8 |   19:12,18 20:16 | **shirt** 28:6 | **southbound** |
| **responsibilities** | **sbkbs** 35:4 36:1 | **shirts** 28:6 |   19:9 |
|   14:22 | **scenarios** 25:25 | **shooting** 11:16 | **speak** 9:8 |
| **retained** 4:21 | **scene** 17:7,9,19 |   20:9,10 21:15 | **speaking** 16:24 |
|   29:15 |   17:20,21 18:21 |   21:18 24:22 |   21:9 26:21 |
| **return** 35:13,17 |   19:16 20:3,19 |   26:3,5 30:14 | **special** 14:9 |
| **returned** 20:10 |   23:18,18 25:22 | **shorthand** 34:4 | **specific** 15:3 |
| **review** 9:19,22 |   26:19 |   34:10 |   16:13 28:1 |
|   10:21 23:19 | **scheduled** | **shot** 19:20 | **specifically** |
|   24:7 34:13 |   13:11 |   25:13 27:2 |   7:18 29:15 |
|   35:7 | **schneider** |   29:16 | **specificity** 30:3 |
| **reviewed** 10:8 |   30:15,17 31:6 | **shots** 24:3,4,19 | **spring** 14:5 |
|   24:6 | **schneider's** |   25:6 26:15 | **srkbs** 1:8 8:17 |
| **ride** 7:8,12 |   30:19 | **show** 29:14 |   33:25 |
| **riding** 16:17 | **seal** 34:20 | **shows** 7:17 | **st** 2:15 |
| **right** 9:12,17 | **section** 18:10 | **side** 19:2,4,8 | **staffing** 7:16 |
|   15:7 18:4 | **security** 23:18 | **sight** 21:15 | **standard** 11:6 |
|   23:24 29:16 |   24:2,6 | **sign** 31:25 | **started** 14:6 |
|   30:9,24 | **sedgwick** 34:3 |   35:12 |   21:15 25:10 |
| **rms** 10:14,15 |   34:21 | **signal** 28:2 | **starting** 13:4 |
| **road** 11:18 | **see** 17:20 30:21 | **signature** 34:23 | **state** 6:7 31:16 |
|   12:15 | **seeing** 17:2 | **signed** 35:20 |   33:9 34:2,5 |
| **rock** 11:17 |   18:1 | **signs** 27:22 | **stated** 20:11 |
|   12:15 | **seemed** 14:11 | **sit** 16:20 22:14 | **statement** |
| **rpr** 1:25 34:24 | **self** 14:25 20:11 | **six** 13:25 |   24:20,22 31:3 |
| **running** 17:3 |   24:21,23 | **slow** 9:15 | **states** 1:1 |
|   18:2 19:8 | **sent** 35:14 | **small** 31:20 | **steve** 7:11 |
|   20:23 | **set** 34:9 | **solutions** 34:25 | **stop** 17:3 |
| **ryan** 30:15 | **shaking** 9:11 |   35:23 | **stops** 17:5 |
| **s** | **shaw** 23:1,8 | **somebody** 7:9 | **street** 16:1,2 |
| **s** 2:21 36:3 | **she'll** 9:15 | **sorry** 27:8 | **subject** 31:15 |
| **saw** 19:8 20:3 | **sheet** 35:11 | **sound** 11:24 | **subpoena** 8:11 |
|   20:11,18 29:8 | | | |

subscribed 33:11
suite 2:14
summation 18:7,20
super 8:18 11:13,17 12:13 12:17,22,25 16:5,10,22 19:3 21:19 24:2,13 26:8 26:11,13 29:19 29:25 30:6,24 31:1,7
supplemental 5:3 9:23 10:4 10:12 18:6,17 18:23
sure 9:15 25:24 27:9
sworn 6:2 33:11 34:7
system 10:18

**t**

t 36:3,3
take 17:15 21:19
taken 1:18 8:23 34:9
talk 9:5,15
talked 29:7
talking 20:22 27:25 31:21
tattoos 27:22

tell 7:19 11:1 21:12 24:1 31:9
testifies 6:4
testify 6:2 34:7
testimony 30:5 33:2 34:7,12 34:13 35:9,18
thing 9:10,14 30:13
things 9:2 26:9 30:20
think 10:16 26:6,6 28:13 28:25 29:9 30:16
thinking 29:10
thomas 20:17 20:17,25 21:16 22:2,15 29:8
time 12:3 14:25 15:19 17:12,18 19:7 20:8 25:25 29:1,24 30:14 34:15 35:19
timeframe 35:8
toben 2:5
today 8:10 9:20 10:9 11:16 16:20 22:14
today's 10:22
told 30:20,23
took 17:7,9 30:19

top 12:12,14
torrance 23:1,8
training 13:23 14:1,9,14 28:19 30:10
transcript 4:1 34:16 35:6,20
transcription 34:11
true 33:3 34:11
truth 6:3,3,4 34:7
try 9:8
trying 17:3
two 18:2,2 19:8 20:11 27:24 29:17,20
type 11:7 13:23 14:1,9 26:18 28:2

**u**

under 21:5 24:24 26:7
undersigned 33:11
understand 8:9 8:19 11:15 16:12 28:13
understanding 26:10,14
united 1:1
unusual 16:8
used 21:22,25 35:20

**v**

v 35:4 36:1
verbal 9:10 25:4
verify 35:9
veritext 34:25 35:14,23
veritext.com 35:15
victim 19:4
video 23:19
vs 1:7 33:25

**w**

wall 20:12
want 17:15 30:21
wanted 30:13
watch 13:2,9 13:12 15:20
way 25:2 27:14 27:18 31:9
wearing 28:6
week 9:25
went 18:3
west 19:4,8
wichita 1:19,21 2:6,20,25 6:13 6:13,16 7:20 7:25 8:19 10:13 11:9 12:4 13:4,17 13:24 14:20 15:16 34:20
wichita.gov 35:2

**wichita.gov.**
  3:3
**wilson**   2:3 4:7
  8:21 25:7 29:3
  31:15
**witness**   34:6,13
  34:20 35:8,10
  35:12,19
**wondering**
  29:19
**work**   13:21
**worked**   13:18
  15:20,22
**working**   13:6
**writing**   34:10
**written**   18:7

**y**

**yeah**   9:25
  14:18 25:10
  26:6
**year**   15:17
**years**   6:17

Federal Rules of Civil Procedure

Rule 30

(e)  Review By the Witness; Changes.

(1)  Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A)  to review the transcript or recording; and

(B)  if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2)  Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.

DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF APRIL 1, 2019.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS

COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted

fashion to authenticated parties who are permitted to access the material. Our data is hosted in a Tier 4 SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and State regulations with respect to the provision of court reporting services, and maintains its neutrality and independence regardless of relationship or the financial outcome of any litigation. Veritext requires adherence to the foregoing professional and ethical standards from all of its subcontractors in their independent contractor agreements.

Inquiries about Veritext Legal Solutions' confidentiality and security policies and practices should be directed to Veritext's Client Services Associates indicated on the cover of this document or at www.veritext.com.